# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

TONY M. RUIZ,                                                                                                   PLAINTIFF
ADC #157474

v.                                          4:20CV00524-BRW-JTK

A. CULCLAGER, et al.                                                                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the

District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I.     Introduction

Plaintiff Tony Ruiz, a state inmate incarcerated at the Maximum Security Unit of the Arkansas Division of Correction (ADC), filed this pro se action pursuant to 42 U.S.C. § 1983, alleging excessive force, failure to protect, conspiracy, failure to follow policy, and state law claims of assault and battery, negligence, and intentional infliction of emotional distress against Defendants. (Doc. No. 2) Defendants Culclager and ADC were dismissed on June 10, 2020,[1] Defendant Kirk was dismissed on September 2, 2020, and Defendant Christopher Stewart was dismissed on February 1, 2021. (Doc. Nos. 9, 41, 75)

This matter is before the Court on the Motion for Summary Judgment, Brief in Support, and Statement of Facts, filed by remaining Defendants Ivory McDaniel and Regina Stewart (Doc. Nos. 82-84), to which Plaintiff responded. (Doc. Nos. 86-89, 91, 93-94) Defendants filed a Reply. (Doc. No. 99)

## II.    Complaint (Doc. No. 2)

---

[1] The failure to follow policy claim also was dismissed.

Plaintiff alleged that on August 9, 2019, Defendants Regina Stewart, C. Stewart, and Kirk came to his administrative segregation cell to escort him to the shower. While he was handcuffed, the officers searched the items Plaintiff wanted to take with him and refused to allow him to bring an extra towel and extra pair of boxer shorts. Plaintiff refused to go to the shower without the items and asked to see a supervisor. Defendant Regina Stewart called Defendant McDaniel, and he approached the cell stating, "don't make me break your arm." At the time, Plaintiff was still cuffed on his right hand/arm, and McDaniel pulled down on the cuff chain hard enough that the cuff popped open and off of his arm. This caused Plaintiff's hand/arm to swell and McDaniel refused his request to see a nurse. McDaniel then ordered Plaintiff to move his arm out of the trap door and when Plaintiff continued to request the nurse, McDaniel smashed the arm and hand in the food trap repeatedly in front of the other officers. McDaniel also used the metal crow bar used to open the food trap door to strike Plaintiff on the top of the hand several times and push his hand inside the cell, again, while the other officers watched. Plaintiff removed his arm from the trap when McDaniel threatened to tase him. Plaintiff convinced defendant Regina Stewart to call a nurse to view and treat his scrapes, cuts, and bruises. The nurse viewed Plaintiff's hand and arm but took no pictures and provided no medical services.

### III.     Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d

3

1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.   Official Capacity

Although Plaintiff sued the Defendants in both their official and individual capacities, the Court initially finds that his monetary claims against them in their official capacities should be dismissed, as barred by sovereign immunity. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65-66 (1989); Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997).

### B.   Individual Capacity

Defendants ask the Court to dismiss Plaintiff's claims against them in their individual capacities, based on qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

4

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[2] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

### 1) Defendants' Motion

According to Regina Stewart's Declaration, on August 9, 2019, Plaintiff stuck his hand in the trap of his cell and refused to remove it. (Doc. No. 82-3, p. 1) When Plaintiff refused her order to remove his hand, she called for Defendant McDaniel. (Id.) She then returned to the control booth and did not witness McDaniel strike Ruiz or the closing of the trap door. (Id.) When Ruiz asked for a nurse, she retrieved LPN John Stevenson, who viewed the wrist and documented his findings. (Id., p. 2) Stevenson also informed her that the Plaintiff was not injured, which was consistent with what she saw. (Id.) She denied failing to protect Plaintiff and denied that she witnessed any use of force against Plaintiff. (Id.)

Defendant McDaniel stated that he was called to Plaintiff's cell because Plaintiff refused to allow another officer to take off his handcuffs. (Doc. No. 82-2, p. 1) He approached the cell and gave Plaintiff several direct orders to present his hands through the trap door so that he could be

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

uncuffed. (Id., p. 2) Plaintiff had one handcuff attached to his right hand, and attached to the cuff was a chain that joins the cuffs with leg restraints, which were not attached. (Id.) McDaniel then grabbed the chain and gave Plaintiff another order to present his right hand, but Plaintiff then yanked on the cuffs to try and get the chain and leg restraints to follow through the trap door. (Id.) McDaniel pulled back the chain, and the handcuff on Plaintiff's right hand came uncuffed and fell off Plaintiff's wrist. (Id.) Plaintiff then stuck his hand in the trap door and stated that he would not let the trap be closed until a Captain was summoned. (Id.) McDaniel gave Plaintiff a direct order to move his hands, and grabbed the bottom of the trap and closed it as Plaintiff moved his hand. (Id.)

In Plaintiff's deposition, he stated the incident occurred when Stewart and Kirk came to take him to his shower but would not allow him to take additional items with him. (Doc. No. 82-1, p. 8) He refused to let them take off the right handcuff and shut the trap, because he wanted to go to the shower. (Id., pp., 12-13) He also admitted that if he had allowed them to uncuff his hand and close the trap, this incident would not have occurred. (Id., p. 13) When Plaintiff refused Stewart's request to be uncuffed, she called McDaniel, who pulled on the cuff without giving Plaintiff a direct order. (Id., pp. 14, 15-17) This caused Plaintiff to lurch forward so he pulled back and when McDaniel again pulled on the cuff it popped open. (Id., p. 17) Plaintiff's wrist swelled up and he refused to move his hand from the trap until he could see a nurse. (Id., p. 18) At that point, McDaniel started slamming the trap on Plaintiff's wrist, said "don't make me break your arm," and then hit Plaintiff's hand with a metal bar. (Id., p.p. 18-19) Defendant Stewart stood and watched the entire encounter. (Id., p. 19) Plaintiff admitted that from the law enforcement perspective, an inmate with one cuff on is in possession of a weapon, the dangling cuff, but also denied that he swung the cuff around. (Id., pp. 15-16) Defendant Stewart called a nurse who

examined him for bleeding, scratches, and a lump. (Id., pp. 21-24) He also admitted that his injuries were minor. (Id., p. 24)

Plaintiff admitted he previously injured that same wrist in 2016 or 2017 when Pope County officials used excessive force against him, and that he often wore a wrap on his wrist. (Id., pp. 19-20) That injury resulted in muscle/nerve damage and the presence of a knot on his wrist. (Id., p. 21)

### 2)      Plaintiff's Response

Plaintiff states that summary judgment is not appropriate because the parties dispute the facts. In his Declaration he states that only his right hand was cuffed with the restraints outside of the cell and that he placed his arm through the food trap and did not remove it through the entire incident. (Doc. No. 87) He claims that prior to McDaniel's arrival, no other officer tried to remove his handcuff, and when McDaniel arrived, he did not give Plaintiff a warning prior to grabbing the cuff and pulling on it. (Id., p. 3) He admits that he refused to remove his hand from the trap after McDaniel ordered him to, but claims he acted passively and posed no threat because he was locked behind a cell door. (Id., pp. 3-4 ) He states McDaniel slammed the trap door on his wrist and hand, and when Plaintiff failed to remove it, McDaniel used the bar which opens the trap to strike Plaintiff's hand. (Id., pp. 4-5) He finally removed his arm so he could speak with a captain. (Id., p. 5) He admits he refused three direct orders to remove his hand and also that he pulled back on the cuff chain to stop McDaniel from placing pressure on his wrist. (Doc. No. 88, p. 11; Doc. No. 89, p. 3) Finally, he states that the incident cause a few minor injuries, pain, and re-aggravated his right wrist injury. (Doc. No. 89, p. 5)

Plaintiff noted inconsistencies between McDaniel's Declaration and his response to requests for admissions, mainly concerning whether the two struggled with the cuff and whether

7

McDaniel ultimately popped the cuff off Plaintiff's wrist or used a key to unlock it. (Doc. No. 93, pp. 73, 77) He also presented a copy of the Medical Services Encounter after the nurse examined him, which stated that the nurse did not see a knot on his wrist, but did see a one-inch abrasion. (Id., p. 113) In addition, Plaintiff did not complain of pain and exhibited an active range of motion to his right wrist, with no other signs of physical distress. (Id.) Finally, Plaintiff claims Defendant's actions violated policies requiring staff to obtain medical attention for inmates, and to file incident reports when force is used.[3]

### 3) Analysis

To support an excessive force claim, Plaintiff must allege and prove that force was not applied in a good-faith effort to maintain or restore discipline, but rather, maliciously and sadistically to cause harm. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). Factors to be considered in determining the reasonable use of excessive force include whether there was an objective need for force, the relationship between the need and the amount of force used, the threat reasonably perceived by the officers, efforts the officers used to temper the severity of their response, and the extent of the inmate's injury. Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002). In Wilkins, the United States Supreme Court held that the absence of serious injury is not irrelevant to an excessive force inquiry, but is a factor which could suggest whether the force could "plausibly have been thought necessary" and might also provide an indication of the amount of force applied. 559 U.S. 34, 37 (quoting Hudson v. McMillian, 503 U.S. at 7). While a "limited application of cap stun to control a recalcitrant inmates constitutes a 'tempered response by prison officials' when compared to other forms of force, ... not every instance of inmate resistance justifies the use of

---

[3] As noted earlier, the violation of policies claim was dismissed on June 10, 2020. (Doc. No. 9)

force." Treats, 308 F.3d at 872 (quoting Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000)).

As noted by Plaintiff, there are some inconsistencies in the record about whether McDaniel ultimately "popped" off the cuff from Plaintiff's wrist or used a key to unlock the cuff.[4] However, these inconsistencies are incidental to a determination of whether McDaniel used excessive force against Plaintiff by closing the trap on his hand/wrist or hitting him with the trap bar. There is no dispute that Plaintiff refused several direct orders to remove his hand, pulled back on the chain when McDaniel tried to pull his hand out to remove the cuffs, and suffered a "minor" injury to his hand. (Doc. No. 82-1, p. 24) Plaintiff also admitted that law enforcement officials would be concerned that cuffs could be used by inmates as a weapon against officers. Assuming Plaintiff's version of the facts as true, that Defendant McDaniel hit his hand with the metal bar while Plaintiff was in his cell and acting passively, the Court finds those allegations state a constitutional claim for excessive force and satisfy one prong of the qualified immunity analysis. The next prong to consider, however, is whether Plaintiff's right to be free from Defendants' actions was so clearly established that a reasonable official would have known that his or her actions were unlawful. The clearly established law must be "'particularized' to the facts of the case.'" White v. Pauly, 137 S.Ct. 548, 551-2 (2017).

In Burns v. Eaton, an inmate who refused to submit to hand restraints when returning from his shower was sprayed with chemicals when he responded by throwing a shampoo bottle at the officer and spitting at him. 752 F.3d 1136, 1140 (8th Cir. 2014) The Court held that the use of

---

[4] In Defendant McDaniel's response to Plaintiff's first request for admissions, he denied that he did not attempt to use the key to remove the handcuff from Plaintiff's wrist. (Doc. No. 91, p. 24) In a later response to an identical request, he admitted to using a key to remove the cuff. (Id., p. 73) He also admitted, however, that he had to pull on the handcuffs, which Plaintiff also admitted. (Id., pp. 77, 24, 6)

9

force was appropriate and did not violate the Eighth Amendment, and noted that because the inmate refused the officer's orders, the officer "faced a recalcitrant inmate." Id. at 1140. In addition, in Sylvester v. Kelley, an inmate who failed to remove his hand from the trap despite two direct orders, alleged that an officer struck his hand twice with the trap bar. No. 5:18cv00120-JM-JTK, 2019 WL 3244590 (E.D.Ar. 2019) The Court held that Plaintiff presented no evidence that the officer acted sadistically to cause harm, but that he acted only in good faith to maintain or restore discipline. Id. *3.

In this particular case, Plaintiff admitted that he refused direct orders, and initially refused to allow officers to remove the cuffs, which could pose a potential danger. Therefore, the Court finds that there was a need for force, and that the amount of force used, considering Plaintiff's admittedly minimal injuries, was reasonable, given the threat they perceived in leaving the cuffs on or allowing Plaintiff's trap to remain open.[5] Despite Defendants' several attempts to order Plaintiff to act otherwise, Plaintiff refused, and suffered minor injuries.[6] Therefore, the Court finds as a matter of law that Defendant McDaniel acted reasonably under the circumstances, and that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right, or that Plaintiff's right to be free from his actions was so clearly established that a reasonable official would have

---

[5] In Sylvester, the Plaintiff testified in his deposition that he knew that open traps create security risks because inmates can traffic and trade and assault officers by dashing them. 2019 WL 3244590.

[6] The medical records do not support Plaintiff's allegation that Defendant McDaniel struck his hand multiple times with a metal bar, as the attending nurse noted only a one-inch abrasion on his hand and no knot with no complaints of pain. (Doc. No. 91, p. 113) In addition, Plaintiff provided no other evidence that he suffered any other type of injury, or attempted to obtain additional medical treatment for other injuries. Finally, Plaintiff admitted that he suffered only a "minor" injury. (Doc. No. 82-1, p. 24)

known that his actions were unlawful.

Given this conclusion, the Court finds Plaintiff cannot support his claim that Stewart failed to protect him, or that both Defendants conspired to violate his constitutional rights. And, upon dismissal of Plaintiff's federal claims against Defendants, the Court declines to exercise supplemental jurisdiction over his state law claims of assault and battery, negligence, and intentional infliction of emotional distress. McLaurin v. Prater, 30 F.3d 982, 984-94 (8th Cir. 1994).

**IV.    Conclusion**

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 82) be GRANTED, and Plaintiff's Complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 19th day of April, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE